IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| EVONNE H., <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS TO PLAINTIFF <br><br> Case No. 1:18-CV-00087-CMR <br><br> Magistrate Judge Cecilia M. Romero |

This matter comes before the Court under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Evonne H.'s (Plaintiff) application for disability insurance benefits under Title II of the Social Security Act. The Court has thoroughly reviewed the parties' arguments (in both their briefs and at oral argument), the certified administrative transcript, and the decision of the administrative law judge (ALJ) denying Plaintiff's disability application. The Court hereby AFFIRMS the Commissioner's final decision denying Plaintiff's application for disability insurance benefits.

## I. STANDARD OF REVIEW

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept

1

as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). That is, in its review under 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the Court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

## II. BACKGROUND

Ms. Howard was 53 years old in January 2015 when she alleged disability due to type 1 diabetes (ECF 13, Certified Administrative Transcript (Tr.) 32). The ALJ determined Ms. Howard had the severe impairments of diabetes mellitus (type 1) and hypothyroidism (Tr. 24). The ALJ considered Listings for the endocrine system finding none applied (Tr. 26). Next, the ALJ determined she had the residual functional capacity (RFC) to perform medium work with additional limitations to avoid exposure to unprotected heights and dangerous machinery (Tr. 26). At step four, the ALJ found that, given this RFC, she was unable to perform his past

relevant work as a bus driver (Tr. 32). However, at step five, the ALJ determined that she could perform other work as a laundry worker, hand packager, and bagger (Tr. 33).

## III. DISCUSSION

On appeal Plaintiff argues that: (1) the ALJ did not appropriately consider the testimonial opinion provided by medical expert Steven Goldstein, M.D., in relation to her RFC; and (2) the ALJ erred in failing to re-contact Dr. Goldstein or order a consultative examination (ECF 20, Plaintiff's Opening Brief (Pl. Br.) 8-15). For the reasons explained below, the Court is not persuaded by these arguments.

### A. The ALJ's RFC assessment is supported by substantial evidence.

Dr. Goldstein initially testified that, if Plaintiff's A1C levels[1] were in the range of 7.6 to 8.9, "she would be in the light level of activity so she wouldn't be able to do anything more than that unless she got her diabetes under better control" (Tr. 51). When Plaintiff's counsel asked Dr. Goldstein if his opinion would change if Plaintiff's A1C levels were about 9.7, Dr. Goldstein opined that "if she was consistently in that range, . . . she would be more in the sedentary range" (Tr. 51). The ALJ ultimately found that Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. § 404.1567(c), not sedentary or light work as defined in 20 C.F.R. § 404.1567(a) and (b).

---

[1] "A1C is a blood test for type 2 diabetes and prediabetes. It measures your average blood glucose, or blood sugar, level over the past 3 months. Doctors . . . use the A1C to see how well you are managing your diabetes. . . Your A1C test result is given in percentages. The higher the percentage, the higher your blood sugar levels have been . . . ." U.S. Nat'l Library of Medicine, MedlinePlus, *A1C*, https://medlineplus.gov/a1c.html (last visited Sept. 13, 2019).

3

If the RFC assessment differs from an opinion, the ALJ must explain why it differs. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7. Here, the ALJ discussed and weighed Dr. Goldstein's opinion (Tr. 31-32). The ALJ gave the opinion "considerable weight" because it was "mostly compatible with the medical evidence of record." "However," the ALJ continued, "the relatively intact examination findings between exacerbations combined with [Plaintiff's] reported activities (e.g., farming, homemaker), suggest a range of medium work, instead" (Tr. 31-32).

The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff had the RFC to perform a range of medium work, not the sedentary or light work opined by Dr. Goldstein. The agency's regulations lay out certain factors that an ALJ must consider when evaluating a medical opinion. *See* 20 C.F.R. § 404.1527(c).[2] While an ALJ is required to consider these factors, he is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, an ALJ need only provide "good reasons in his decision for the weight he gave to the" opinions. *Id.* (citing prior section 20 C.F.R. § 404.1527(d), which was later re-numbered as § 404.1527(c) in 2012). The Court finds that the ALJ provided good reasons to discount Dr. Goldstein's opinion that Plaintiff's A1C levels would restrict her to sedentary or light work.

---

[2] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules). Ms. Howard applied in 2015, so the Court's review of the ALJ's consideration of the medical opinions is governed by 20 C.F.R. § 404.1527, not 20 C.F.R. § 404.1520c.

4

First, the Court finds that the ALJ reasonably considered the inconsistency between Dr. Goldstein's opinion that Plaintiff could perform only sedentary or light work and the generally normal examination findings between exacerbations. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion because it was inconsistent with objective medical evidence).

As the ALJ discussed earlier in his decision, the record was replete with normal examination findings. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion."); *Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) (unpublished) (rejecting the claimant's argument that the ALJ did not specifically identify what other evidence allegedly contradicted Dr. Hall's assessed limitations: "Although there was not a contemporaneous discussion of this evidence in discounting Dr. Hall's opinion, in reading the ALJ's decision as a whole, it is evident Dr. Hall's opinion is inconsistent with the record.").

Here, the ALJ discussed, for example, treating physician Dr. Aardema's normal examination findings (Tr. 28-29), treating registered nurse (RN) Mr. Rawlins's normal objective findings, and later findings of "intact physical and mental functioning during examinations" (Tr. 28). In this same vein, the ALJ cited Mr. Rawlins's repeated notation that Plaintiff experienced "[d]ramatic" and "remarkabl[e]" improvement in her glycemic control (Tr. 29). While the ALJ

5

did not explicitly tie his discussion of Plaintiff's A1C levels and improved glycemic control to his discussion of Dr. Goldstein's opinion, it is apparent from the ALJ's decision that he considered all of this evidence as part of the RFC analysis. And given that Dr. Goldstein tied his opinion to Plaintiff's glycemic control, it was reasonable for the ALJ to consider that evidence showing "[d]ramatic" and "remarkabl[e]" improvement in that control weighed against the doctor's opinion that Plaintiff was limited to only light work.

The second reason the ALJ gave for discounting Dr. Goldstein's opinion was Plaintiff's reported activities as a farmer and homemaker (Tr. 31-32). Plaintiff described a wide range of robust daily activities that appeared minimally impacted by her diabetes. Her family owned a farm with "a big herd of cattle," 20 hogs, and a chicken flock (Tr. 60). Plaintiff gathered eggs, fed the pigs, held the gate "or that kind of thing" when moving or corralling cattle, and "[s]ometimes" was running while working cattle—she noted that "[f]arming time doesn't ever stop" (Tr. 60). She also worked 10 to 15 hours per month as a secretary for Farm Bureau (Tr. 56). And she volunteered with her church and as a scout leader (Tr. 57). She also drove her elderly father to doctor appointments and helped him in his yard (in addition to doing all of her own yard work) (Tr. 57-58). And she walked or biked three miles every morning (Tr. 58).

The ALJ reasonably concluded that Plaintiff's reported activities were more consistent with medium work than with the light work that Dr. Goldstein had indicated. The ALJ found that "[s]uch extensive, demanding, and varied activities are not very compatible with an inability to perform substantial gainful activity, but they are compatible with a reduced range of medium work." *See* 20 C.F.R. § 404.1527(c)(4) (ALJ considers whether an opinion is consistent with the

6

record as a whole); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (claimant's daily activities were a reason for rejecting treating physician's opinion that the claimant was totally disabled).

Taken together, the Court can follow the logical bridge that the ALJ built between his reasoning and the evidence. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (ALJ must give good reasons in the decision for the weight assigned the opinion, and the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the medical opinion and the reasons for the weight). The Court therefore finds that the ALJ gave reasons to discount Dr. Goldstein's opinion. While the Court would have preferred that the ALJ more thoroughly discussed his consideration of Plaintiff's A1C levels in relation to Dr. Goldstein's opinion, the ALJ's decision as a whole demonstrates that he adequately considered the evidence, and this Court can neither reweigh the evidence nor substitute its judgment for that of the ALJ.

### B. The ALJ was not required to re-contact Dr. Goldstein or order a consultative examination.

The Court also rejects Plaintiff's arguments that the ALJ should have either re-contacted Dr. Goldstein or ordered a consultative examination before discounting his opinions. "[I]t is not the rejection of the . . . physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] . . . physician' that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (citation omitted); *see* 20 C.F.R. § 404.1520b(b) (providing that, when the evidence received from a medical source is insufficient for a determination of disability, or after weighing the

7

evidence the agency cannot reach a conclusion about disability, the agency will try to resolve the problem and may do so by re-contacting the source for clarification).

Similarly, the ALJ was not required to order a consultative examination before discounting Dr. Goldstein's opinion. *See* 20 C.F.R. § 404.1519a(b) (stating that the agency *may-*—but is not required to—purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence is insufficient to allow the agency to make a determination on the claim); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990) ("The [Commissioner] has broad latitude in ordering a consultative examination."). Here, the evidence was sufficient for the ALJ to render a decision, and the ALJ was not required to engage in any further development before he discounted part of Dr. Goldstein's opinion. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (ALJ did not need to further develop the record where sufficient evidence existed to make a disability determination).

Indeed, the record before the ALJ contained not only examination findings and Dr. Goldstein's opinion, but also several other opinions that supported the ALJ's conclusion that Plaintiff had the RFC to perform a range of medium work (Tr. 23-33). Treating RN Mr. Rawlins opined in February 2015 that Plaintiff could sit eight hours in a workday, stand eight hours in a workday, and walk six hours in a workday, and that she had no restrictions on lifting or carrying (Tr. 576). Such limitations appear consistent with medium work. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). Mr. Rawlins then opined in January 2016 that Plaintiff could constantly (defined as 67 to 100% of a workday) lift and carry up to 20 pounds,

8

occasionally (defined as 1 to 33% of a workday) lift up to 50 pounds, and constantly sit, stand, and walk during a workday (Tr. 502). Such limitations appear to fall between light and medium work, but closer to medium work. *See id.* § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

Treating physician Dr. Aardema opined in October 2016 that Plaintiff could constantly lift and carry up to 20 pounds, occasionally lift up to 50 pounds, constantly sit, and frequently stand and walk during a workday (Tr. 326; 329). These limitations likewise appear to fall between light and medium work, but closer to medium work. Although Dr. Aardema also opined that Plaintiff could "not perform physical exertion for longer than 5 minutes," the ALJ discounted this portion of his opinion for on the reasonable basis that Plaintiff herself said she could walk or ride a bicycle for three miles, which the ALJ found "presumably takes longer than 5 minutes (Tr. 30-31)." The ALJ also noted that the five-minute limitation was inconsistent with the remainder of Dr. Aardema's assessment (Tr. 30). Indeed, it is difficult to reconcile Dr. Aardema's opinion that Plaintiff could not perform physical exertion for longer than five minutes with his opinion that she could constantly lift up to 20 pounds during a workday.

Also supporting the ALJ's conclusion that Plaintiff could perform a range of medium work was the opinion of reviewing physician Dr. Arogundade. In November 2016, Dr. Arogundade opined that Plaintiff could lift or carry 20 to 50 pounds occasionally, 10 to 25 pounds frequently, and 10 pounds or less constantly; and could constantly sit and stand (Tr. 298-302). These limitations appear consistent with medium work. *See* 20 C.F.R. § 404.1567(c)

9

("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

Where, as here, "the record contains support for both the notion that [a claimant] has extreme deficiencies . . . and the notion that [her] . . . limitations are not that severe," the ALJ is "entitled to resolve such evidentiary conflicts." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (citation omitted)). "Concluding otherwise would require [the Court] to reweigh the evidence, a task [it] may not perform." *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)).

## IV. CONCLUSION

The Court finds that the ALJ's decision denying Plaintiff's disability claim was supported by substantial evidence and free of legal error. The Commissioner's final decision is therefore AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 19 September 2019.

_Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah